**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**GREAT FALLS DIVISION**

_____

CARLOS 'A-LAIL MUHAMMAD
aka CARLOS MARQUETT ELLERBE,

                                   CAUSE NO. CV 05-124-GF-CSO

          Petitioner,

     vs.                           FINDINGS AND RECOMMENDATION OF
                                   UNITED STATES MAGISTRATE JUDGE
                                   TO DENY PETITION FOR WRIT OF
WARDEN MIKE MAHONEY,               HABEAS CORPUS

          Respondent.

_____

     This matter is currently pending on Petitioner Carlos 'A-
Lail Muhammad's petition for a writ of habeas corpus filed
pursuant to 28 U.S.C. § 2254.  Petitioner is challenging his 1999
conviction for sexual intercourse without consent.  He alleges
that his plea to this charge was not made knowingly and
voluntarily.

**A.  PARTIES**

     Petitioner Carlos 'A-Lail Muhammad aka Carlos Marquett
Ellerbe is a state prisoner proceeding _pro se._  He is
incarcerated at Montana State Prison.  The named Respondent is
Mike Mahoney, Warden of the Montana State Prison and current
custodian of Petitioner.

**B.   FACTUAL AND PROCEDURAL HISTORY**

On April 8, 1998, Muhammad was arrested and charged with having sexual intercourse with an underage female, a felony pursuant to Mont. Code Ann. § 45-5-503(1).  That section provides that, "[a] person who knowingly has sexual intercourse without consent with another person commits the offense of sexual intercourse without consent . . . "  Mont. Code Ann. § 45-5-501(1)(b)(iv) further provides that, "[a]s used in 45-5-503, the term 'without consent' means the victim is incapable of consent ... because the victim is less than 16 years old."  At the time of the offense, Muhammad was twenty-two years old and the girl was fourteen.

On April 30, 1998, Muhammad was arraigned and entered a plea of not guilty.  Immediately following his arraignment, Muhammad began sending letters directly to District Court Judge Marge Johnson (Judge Johnson), asserting that the victim was a liar and that her accusations were for attention.  He also complained of "lack of support" from his lawyer.  Judge Johnson initially responded by forwarding copies of these letters to counsel.  Later, on June 22, 1998, she issued an order directing Muhammad to refrain from further ex parte communications with the court.

On August 26, 1998, Muhammad entered into a plea agreement wherein he agreed to plead guilty to sexual intercourse without consent in exchange for the State's recommendation of a ten-year

suspended sentence.  Pursuant to the agreement, Muhammad signed

an Acknowledgment of Waiver of Rights by Plea of Guilty,

acknowledging, in part, that:

> This plea is being voluntarily made and not the result
> of force or threats or promises. I acknowledge that my
> attorney has explained to me and advised me of the
> following [trial rights and waiver thereof] . . .
>
> I acknowledge that I am satisfied with the services of
> my attorney and that there has been ample time to
> prepare a defense.
>
> I am not suffering any emotional or mental disability
> from any cause including mental disease or defect and
> am not impaired from taking any drugs, alcohol, or
> prescription medication. I fully understand what I am
> doing . . .
>
> I am satisfied that my lawyer has been fair to me and
> has represented me properly.

The district court set a change of plea hearing for

September 24, 1998.  However, on September 9, 1998, Muhammad,

despite Judge Johnson's order, forwarded another letter to her

professing his innocence and requesting the court's permission to

withdraw his guilty plea, presumably, meaning to withdraw from

his plea agreement.  Judge Johnson, in compliance with her

earlier order, did not respond directly to Muhammad, but

forwarded copies of his letter to counsel.

On September 24, 1998, Muhammad appeared for his change of

plea.  As he had done when he signed the Acknowledgment of Waiver

of Rights by Plea of Guilty, Muhammad acknowledged to the court

on the record, prior to entering his guilty plea, that: (1) he

was not threatened with or promised anything outside of the

written plea agreement; (2) he was not under the influence of
drugs or alcohol; (3) he was not suffering from any disability;
(4) he understood the action being taken against him; (5) he was
pleading voluntarily; and (6) he was satisfied with his counsel's
assistance.  Upon questioning by counsel, Muhammad admitted he
had sex with the victim and the victim was under the age of 16.
Judge Johnson then questioned Muhammad about his letters and his
claim that he did not know the victim was under the age of 16.
He stated, "At that point, I didn't actually know her age.  But I
don't make excuses about drinking alcohol.  I would have known if
I wasn't drinking that night."  The court then asked if he was
waiving any defense based on that and he responded: "correct."
(Voluminous Exhibit-Transcript of September 24, 1998 change of
plea hearing, p. 8).  Judge Johnson then accepted his guilty plea.

      Muhummad posted bail and was released from jail on November
6, 1998.  On May 17, 1999, Muhammad was sentenced to a six-year
deferred sentence.  At the sentencing hearing, in response to the
court's comment that he showed no empathy for the victim,
Muhammad stated, "Your Honor, I didn't want to say this in court,
again, I have never admitted to a rape.  I know that I had sex
with someone who was 14 years old at the time.  But I have never
admitted to this.  I'll take it according to my spiritual
beliefs, I had sex with somebody I'm not married to, and someone
who's under the age of consent. . . " (Voluminous Exhibit-

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 4

Transcript of May 17, 1999 sentencing hearing, p. 32).

On January 18, 2000, the State petitioned the District Court for revocation of Muhammad's deferred sentence and on June 5, 2000, the court revoked Muhammad's six-year deferred sentence and sentenced him to twenty years, with fifteen years suspended. Muhammad appealed.  On March 18, 2002, the Montana Supreme Court affirmed the sentence in part, reversed in part and remanded for further proceedings. State v. Muhammad, 2002 MT 47, ¶ 52, 309 Mont. 1, ¶ 52, 43 P.3d 318, ¶ 52 (Muhammad I).

On September 12, 2001, while Muhammad's case was pending on appeal, the State filed a second petition to revoke the suspended sentence.  A second revocation hearing was held on April 17, 2002, shortly after the Montana Supreme Court's March 18, 2002 remand in Muhammad I.  Muhammad entered a "true" answer to one of the alleged violations, and on April 24, 2002, the district court re-imposed a six-year deferred sentence.

On May 17, 2002, the State filed a third petition for the revocation of Muhammad's deferred sentence.  Muhammad answered "not true" to the alleged violations, and the District Court scheduled a hearing on the matter.  However, before the scheduled hearing, Muhammad, on November 13, 2002, over four years after entering his guilty plea to the charge, filed a motion to withdraw his plea.  On April 10, 2003, after an evidentiary hearing, the district court entered an order denying the motion.

On April 30, 2003, following his third revocation hearing, Muhammad entered a "true" answer to violating several conditions of his deferred sentence.  On May 13, 2003, the District Court sentenced him to twenty years in the Montana State Prison with ten years suspended.

Muhammad appealed the denial of his motion to withdraw his guilty plea to the Montana Supreme Court.  In a detailed opinion, issued September 20, 2005, the Montana Supreme Court affirmed that denial. <u>State v. Muhammad</u>, 2005 MT 234, 328 Mont. 397, 121 P.3d 521. <u>Muhammad II</u>).

C.  ISSUES

In his federal habeas petition, Muhammad raises the same claims brought before the Montana Supreme Court that (1) the district court abused its discretion when it did not allow him to withdraw his guilty plea; and (2) consideration of the three factors traditionally reviewed demonstrates that he should have been permitted to withdraw his plea.

In his state court proceedings, Petitioner identified several factors leading him to enter a guilty plea which he contended demonstrated that his plea was not voluntary.  First, he argued that he signed the plea agreement out of fear because, while he was in jail, he was traumatized by racism and fights due to being a black man charged with raping a white teenager.  He

also alleged that he just wanted to get out of jail to research his case.

Second, he contended that the colloquy before he entered his plea was inadequate.  He alleged that the court had knowledge that his guilty plea was involuntary from the letters he wrote to the judge and that there was not a sufficient factual basis to support a guilty plea to the charge because he did not admit that he knew the victim's age at the time of the incident.

Finally, Muhammad argued that he would not have pled guilty to the charges had he not been misled by counsel and the court regarding the defense that he reasonably believed the victim was over 16.  See Mont. Code Ann. § 45-5-511 (1997).  He contended that his counsel told him he did not have any defense to the charge and the judge instructed him that knowledge of the victim's age was not a defense. (Document 1-Voluminous Exhibits, Transcript of March 26, 2003 hearing, p. 10).

## D.  STATUTE OF LIMITATIONS

This action is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Weaver v. Thompson, 197 F.3d 359, 362 (9th Cir. 1999).  Under AEDPA a one-year statute of limitations applies to petitions filed under 28 U.S.C. § 2254.  28 U.S.C. § 2244(d) provides as follows:

(1) A 1 year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
    (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
    (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The judgment against Petitioner was entered on May 17, 1999. (Document 1, p. 2).  Petitioner did not file his petition with this Court until December 27, 2005.  As set forth in the statute, the time during which a properly filed application for state post-conviction or other collateral review is pending shall not be counted toward any period of limitation.

The Court notes that Petitioner did appeal his sentence to the Montana Supreme Court after his first revocation hearing and resentencing.  See Muhammad I.  His notice of appeal in that

matter was filed on July 26, 2000, one year and forty days after his conviction. Muhammad I, ¶ 22. That appeal was decided on March 18, 2002, and he did not file his motion to withdraw his guilty plea until November 13, 2002, and did not file his Notice of Appeal with the Montana Supreme Court until May 7, 2003. (Document 1-Voluminous Exhibits, Muhammad II Appellant's Brief, p. 3). Even liberally construing all of Petitioner's state court filings as tolling his federal statute of limitations (and it is questionable whether in fact they would), Petitioner's federal habeas petition was filed beyond the applicable one-year statute of limitations period.

When the Court sua sponte raises the statute of limitations issue, it must give a pro se petitioner an opportunity to respond. Herbst v. Cook, 260 F.3d 1039, 1042-43 (9th Cir. 2001). Here, the Petitioner was out of jail for a substantial period of time after his conviction, making it highly unlikely that he could demonstrate a sufficient basis for equitable tolling. Petitioner will have an opportunity to respond to the statute of limitations issue in his objections to these Findings and Recommendation, if he so chooses. Additionally, as set forth below, the Court is recommending the dismissal of this petition on the merits. The Court will therefore recommend the dismissal of this petition for failure to file within the applicable statute of limitations.

**E.   LEGAL STANDARD FOR EVALUATING MERITS**

AEDPA "modifies the role of federal habeas courts in reviewing" habeas petitions. <u>Williams v. Taylor</u>, 529 U.S. 362, 403 (2000)(O'Connor, J., concurring).  "The Supreme Court has said that § 2254(d)(1) imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state court decisions be given the benefit of the doubt.'"  <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003)(citing <u>Lindh</u>, 521 U.S. at 333 n.7 and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 123 S.Ct 357, 360 (2003)(per curiam)).

Following the AEDPA's enactment, 28 U.S.C. § 2254(d) now reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state court's decision is 'contrary to' federal law if the state court (1) 'applies a rule that contradicts the governing law' set forth in Supreme Court case authority or (2) applies controlling law to a set of facts that are 'materially indistinguishable' from a Supreme Court decision but nevertheless

reaches a different result." Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1169 (9th Cir. 2003)(citing Lockyer v. Andrade, 538 U.S. 63, 73 (2003)).

"A state court's decision is an 'unreasonable application' of federal law if it is 'objectively unreasonable,' which 'requires the state court decision to be more than incorrect or erroneous.'  Thus, 'an unreasonable application is different from an incorrect one.'"  Id. at 1169-1170 (citing Lockyer, 538 U.S. at 75 and Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850 (2002)).

With regard to factual issues, habeas relief can only be granted if the adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).  "As to more debatable factual determinations, the care with which the state court considered the subject may be important." Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997)(en banc) cert. denied 522 U.S. 1008 (1997) overruled on other grounds by Lindh, 521 U.S. 320.  Further, AEDPA directs that factual findings of the state court be granted a presumption of correctness that can only be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Jeffries, 114 F.3d at 1499-1500.

Based on the foregoing statutory structure for granting habeas relief, the Court will examine the Montana Supreme Court's decision on Petitioner's claim for relief, review the applicable federal law, and analyze Petitioner's contentions.

**F.  EXAMINATION OF STATE COURT DECISION**

The Montana Supreme Court cited state and federal law in analyzing whether Petitioner entered a plea voluntarily.  It first considered Petitioner's claim that he signed the plea agreement out of "fear" and due to being traumatized as a prisoner in the Cascade County Jail.  The supreme court found that Petitioner's claim that the conditions of his confinement made him physically fearful to the point of entering a guilty plea was not convincing given that Petitioner had repeatedly acknowledged that he was not entering a plea under any threat and was doing so voluntarily.   In addition, Petitioner was released from jail and was free for approximately six months prior to sentencing, and yet made no effort to withdraw his plea before the sentencing hearing.  The supreme court also found that Petitioner's release prior to sentencing belied his contention that he merely pled guilty to obtain a release from jail to be able to "research" his case.

Because he testified at the hearing on his withdrawal motion that his attorney had adequately represented him, the supreme court also rejected Petitioner's contention that his attorney

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
DENY PETITION FOR WRIT OF HABEAS CORPUS / PAGE 12

failed to file a motion to withdraw the plea despite Petitioner's requests to do so.

The Montana Supreme Court also dismissed Muhammad's assertions that his attorney failed to advise him of an available defense under Mont. Code Ann. § 45-5-511 (1997), and that Judge Johnson advised him that he had no defense to the charge.  The supreme court found that Muhammad was aware of the age defense and was prepared to waive it when he entered his plea.  The record reflects that Petitioner admitted under oath to having sexual intercourse without consent with an underage female and he waived the defense regarding knowledge of the victim's age when the sentencing court questioned him in reference to the statements he had made in his letters that he did not know the victim was under age sixteen. (Voluminous Exhibit-September 24, 2003 Change of Plea Transcript, p. 8).

The supreme court also found that the plea colloquy was adequate.  Despite Muhammad's claims in his letters that he had entered the plea agreement by mistake, that he was not being represented properly and that he did not know the age of the victim, he abandoned all of these assertions under oath at the change of plea hearing.  There, he affirmed the work of his counsel, waived his defenses to the victim's age and affirmed his agreement to plead guilty.  The Montana Supreme Court also found

that the colloquy adequately addressed the elements of the offense and laid the factual basis for acceptance of the plea.

Lastly, the supreme court recognized that Muhammad received the "benefit of the bargain" from his plea agreement.  The agreement required Muhammad's admission of guilt and required the State to recommend a ten-year suspended sentence.  Muhammad received the benefit of that bargain, with the State recommending a ten-year suspended sentence, and the court imposing a six-year deferred sentence.  It was not until four and one-half years after receiving his initial deferred sentence – when it became apparent that he faced the loss of his freedom – that Muhammad filed a motion to withdraw his plea.

Ultimately, the Montana Supreme Court concluded that Muhammad's guilty plea, entered after signing an Acknowledgment of Waiver of Rights by Plea of Guilty, and after engaging in a proper colloquy with his attorney and the court, was voluntary. Muhammad testified that he understood the charges against him, that he was pleading voluntarily, and that he was satisfied with the assistance of his counsel. He admitted to the crime and waived his defenses based upon the age of the victim. The Court found that Muhammad understood the repercussions of his decision and the resulting risks inherent in choosing the alternative of pleading guilty.

## G.  APPLICABLE FEDERAL LAW

It is not within the province of this court to review alleged abuses of discretion by state courts.  A state prisoner is entitled to habeas relief only if he is being held "in violation of the constitution, laws or treaties of the United States."  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1982).  Therefore, the Court cannot consider Petitioner's claims as written.  The Court will, however, liberally construe Petitioner's claim to be that his guilty plea was constitutionally invalid because it was neither voluntary nor intelligent.[1]  "A guilty plea is valid so long as it 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  United States v. Read, 778 F.2d 1437, 1440 (9th Cir. 1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)), cert. denied, 479 U.S. 835 (1986).

## H.  ANALYSIS OF PETITIONER'S CONTENTIONS

From this record, this Court cannot find "clear error" with the state court's decision and does not find that it was contrary to federal law or involved an unreasonable application of federal law.  The Court finds that the state court reasonably applied the

---

[1]While Petitioner did not present his issues to the Montana Supreme Court as federal claims, he did base his arguments in part on federal case law.  Accordingly, for purposes of this Findings and Recommendation, the Court will presume that Petitioner has presented and exhausted a federal claim.

correct authority to the facts.  Again, it is not for this Court
to decide whether the district court abused its discretion in
denying Petitioner's motion to withdraw his plea.  The only
possible constitutional issue is whether Petitioner's plea was
knowingly and voluntarily made.  The Montana Supreme Court
provided a detailed analysis regarding the entry of Petitioner's
plea.  As set forth above, the Court must consider the state
court's factual findings and grant habeas relief if the
adjudication of the claim resulted in a decision that was based
on an unreasonable determination of the facts in light of the
evidence presented in the state court proceeding.  28 U.S.C. §
2254(d)(2).

Both the state district court and the Montana Supreme Court
made the finding that Petitioner's plea was made knowingly and
voluntarily.  AEDPA directs that factual findings of the state
court be granted a presumption of correctness that can only be
rebutted by clear and convincing evidence.  28 U.S.C. §
2254(e)(1); Jeffries, 114 F.3d at 1499-1500.  While Petitioner
has asserted a number of arguments to the contrary, this Court
finds that it is insufficient to rebut the factual findings of
the state courts.  Therefore, those findings must be presumed to
be correct.

This is a situation where Petitioner has admitted to the
elements of the crime of sexual intercourse without consent,

waived his defense and reaped the benefit of his plea for four years before filing a motion to withdraw his plea.  It was not unreasonable to find this to be a knowing and voluntary plea.  Accordingly, this Court cannot say that the state court's adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2).

## I. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), as amended by the AEDPA, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  See Hohn v. United States, 524 U.S. 236, 240 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).  The "substantial showing" standard can be satisfied on an issue-by-issue basis.  Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

The United States Supreme Court has defined the standard of issuance for a certificate of appealability ("COA") as follows:

> To obtain a COA under §§ 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot, includes showing that reasonable jurists could debate whether (or, for that matter agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'

Slack, 529 U.S. at 483-484 (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

"The court must resolve doubts about the propriety of a COA in the petitioner's favor." Jennings v. Woodford, 290 F.3d 1006 (9th Cir. 2002) (citing Lambright, 220 F.3d at 1025).  In addition, a petitioner is not required to establish that he will prevail on the merits.  Lambright, 220 F.3d at 1025 (citing Barefoot, 463 U.S. at 893 n.4).  Rather, the COA requirement seeks only to prevent frivolous appeals from wasting judicial resources, while still affording petitioners an opportunity to show potential for merit.  Lambright, 220 F.3d at 1025.

The Ninth Circuit has described at least two examples of situations which may satisfy the Barefoot standard.  First, the standard may be met where, although there is a controlling rule in the particular circuit, another circuit has reached a conflicting view.  Id. at 1025-26.  Second, a petitioner may persuasively argue that circuit law which forecloses relief should be reconsidered.  Id.

The COA must indicate which issues satisfy the required showing.  28 U.S.C. § 2253(c)(3).  Additionally, the district judge must "state why a certificate should not issue." Fed. R. App. P. 22(b)(1).

Petitioner has failed to make a substantial showing that he was deprived a federal constitutional right.  This Court has

recommended the denial of his claims on two different grounds. Reasonable jurists would not debate whether this petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'  Accordingly, any request for a certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

The petition for writ of habeas corpus should be **DISMISSED WITH PREJUDICE** and a Certificate of Appealability should be **DENIED.**

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

The Clerk of Court shall serve a copy of these Findings and Recommendation on Petitioner.  Petitioner is advised that, pursuant to 28 U.S.C. § 636(b)(1), he has the right to file written objections to this Findings and Recommendation.  Any objections to the Findings and Recommendation must be filed with the Clerk of Court within twenty (20) days after the signing of this recommendation, or objection is waived.

**PETITIONER IS CAUTIONED THAT HE MUST KEEP THE COURT ADVISED OF ANY CHANGE OF ADDRESS AND A FAILURE TO DO SO COULD RESULT IN A RECOMMENDATION OF DISMISSAL OF THIS CAUSE OF ACTION.**

DATED this 4th day of October, 2006.

/s/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge